# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

JENNIFER KAY INLOW,
    Plaintiff,

    vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:17-cv-163
Barrett, J.
Litkovitz, M.J.

**REPORT AND**
**RECOMMENDATION**

Plaintiff Jennifer Kay Inlow brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application for disability insurance benefits ("DIB"). This matter is before the Court on plaintiff's Statement of Errors (Doc. 7), the Commissioner's response in opposition (Doc. 10), and plaintiff's reply (Doc. 11).

## I. Procedural Background

Plaintiff protectively filed her application for DIB in May 2013, alleging disability since September 12, 2011, due to neck, back, hip, and left shoulder pain, anxiety, arthritis, asthma, and migraines. The application was denied initially and upon reconsideration. Plaintiff requested and was granted a *de novo* hearing before administrative law judge ("ALJ") Jason C. Earnhart. Plaintiff, who was represented by a non-attorney representative, and a vocational expert ("VE") appeared and testified at the ALJ hearing on September 30, 2015. On November 5, 2015, the ALJ issued a decision denying plaintiff's DIB application. Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four

steps of the sequential evaluation process. *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

## B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. The [plaintiff] last met the insured status requirements of the Social Security Act on June 30, 2015.

2. The [plaintiff] did not engage in substantial gainful activity during the period from her alleged onset date of September 12, 2011 through her date last insured of June 30, 2015 (20 CFR 404.1571 *et seq.*).

3. Through the date last insured, the [plaintiff] had the following severe impairments: degenerative disc disease of the cervical and lumbar spine; myofascial pain syndrome; arthritis; migraine headaches; carpal tunnel syndrome; and chronic obstructive pulmonary disease/asthma (20 CFR 404.1520(c)).

4. Through the date last insured, the [plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the [plaintiff] had the residual functional capacity [("RFC")] to perform light work as defined in 20 CFR 404.1567(b) except occasional extreme temperatures, humidity and atmospheric conditions, and pulmonary irritants; occasional foot controls; occasional ramps and stairs, stooping, kneeling, crouching, and crawling; and never to climb ladders, ropes, or scaffolds. Additionally, the [plaintiff] is limited to frequent reaching, pushing/pulling; frequent handling, fingering, and feeling.

6. Through the date last insured, the [plaintiff] was unable to perform any past relevant work (20 CFR 404.1565).[2]

7. The [plaintiff] was born [in] . . . 1975 and was 39 years old, which is defined as a younger individual age 18-49, on the date last insured (20 CFR 404.1563).

8. The [plaintiff] has a limited education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the dated last insured, considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the [plaintiff] could have performed (20 CFR 404.1569 and 404.1569(a)).[3]

11. The [plaintiff] was not under a disability, as defined in the Social Security Act, at any time from September 12, 2011, the alleged onset date, through June 30, 2015, the date last insured (20 CFR 404.1520(g)).

(Tr. 127-39).

## C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley*

---

[2]Plaintiff's past relevant work was as a nurse's aide, a medium, semi-skilled position, which she performed at a very heavy exertional level. (Tr. 137, 170).

[3]The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative sedentary unskilled jobs of order clerk, with 3,000 jobs in the state and 90,000 jobs in the nation; charge account clerk, with 1,200 jobs in the state and 70,000 jobs in the nation; and inspector, with 3,200 jobs in the state and 50,000 jobs in the nation. The ALJ also relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative light unskilled jobs of photo copy machine editor, with 1,500 jobs in the state and 44,000 jobs in the nation; marker, with 7,200 jobs in the state and 115,000 jobs in the nation; and mail sorter, with 2,300 jobs in the state and 55,000 jobs in the nation. (Tr. 138-39, 170-71).

*v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

**D. Specific Errors**

On appeal, plaintiff argues that: (1) the ALJ failed to properly weigh the medical opinion evidence by assigning "very little weight" to the opinions provided by her treating physician, pain management specialist Dr. Hungchih Lee, M.D., and by assigning greater weight to the

opinions of the non-examining state agency physicians; and (2) the ALJ failed to properly evaluate plaintiff's credibility. (Docs. 7, 11).

## 1. The ALJ's weighing of the treating physician's opinion

### i. The treating physician rule

It is well-established that the findings and opinions of treating physicians are entitled to substantial weight. "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530-31 (6th Cir. 1997). *See also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference.").

"Treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)(2)). *See also Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). If the ALJ declines to give a treating source's opinion controlling weight, the ALJ must balance the factors set forth in 20 C.F.R. § 404.1527(c)(2)-(6) in determining what weight to give the opinion. *See Gayheart,* 710 F.3d at 376; *Wilson*, 378 F.3d at 544. These factors include the length, nature and extent of the treatment relationship and the frequency of examination. 20 C.F.R. § 404.1527(c)(2)(i)(ii); *Wilson*, 378 F.3d at 544. In addition, the ALJ must consider the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict

the opinion. 20 C.F.R. § 404.1527(c)(3)-(6); *Gayheart,* 710 F.3d at 376; *Wilson,* 378 F.3d at 544.

On the other hand, opinions from non-treating and non-examining sources are never assessed for "controlling weight." A non-treating source's opinion is weighed based on the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(3)-(6); *Wilson,* 378 F.3d at 544. Because a non-examining source has no examining or treating relationship with the claimant, the weight to be afforded the opinion of a non-examining source depends on the degree to which the source provides supporting explanations for his opinions and the degree to which his opinion considers all of the pertinent evidence in the record, including the opinions of treating and other examining sources. 20 C.F.R. § 404.1527(c)(3). Under the Social Security regulations, the opinions of state agency medical consultants may be entitled to significant weight where they are supported by record evidence. *Lee v. Comm'r of Soc. Sec.,* 529 F. App'x 706, 713 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(e)(2)(i)).

*ii. The treating physician's assessments*

Plaintiff sustained an injury in September 2009 when she lifted a patient while working as a nurse's aide. (Tr. 532-33). Pain management specialist Dr. Lee started treating plaintiff on November 16, 2010 (Tr. 451-54) and continued to treat plaintiff through at least September 2015. (Tr. 340-456, 1070-1188, 1241-64). Dr. Lee completed five assessments of plaintiff's functional capacity. Dr. Lee prepared a Strength Assessment at the request of the local Department of Job & Family Services on February 14, 2013. (Tr. 549-50). Dr. Lee reported

7

that plaintiff could sit, stand, type, and fill out forms for 1 to 2 hours per day; she could fold, alphabetize, and sort papers, operate a copier, fax, shredder or printer, stuff envelopes, and answer phones for less than 2 hours per day; she could lift 25 or fewer pounds for less than 2 hours per day; and her limitations were expected to last 12 months. Dr. Lee prepared a second Strength Assessment on November 14, 2013. (Tr. 547-48). He reported that plaintiff could sit, stand, and fill out forms for 2 to 4 hours per day; she could type for 1 hour per day; she could fold, alphabetize, and file papers, operate a copier, fax, shredder, or printer, stuff envelopes, and answer phones for 2 to 4 hours per day; and she could lift 25 or fewer pounds for 1 hour per day. (Tr. 547-48). Dr Lee opined that her limits would last 3 to 6 months.

On October 28, 2014, Dr. Lee completed a Medical Source Statement. (Tr. 635-37). He listed plaintiff's diagnoses as cervical disc displacement, thoracic facet syndrome, carpal tunnel syndrome, and lumbago. Dr. Lee reported that plaintiff could occasionally lift/carry 1 to 5 pounds, rarely lift/carry 6 to10 pounds, and never carry more than 10 pounds; she could never use her right and left hands/arms for reaching and was restricted to occasional handling/fingering with either hand; in an 8-hour workday she could stand 1 to 2 hours total and 30-40 minutes uninterrupted, walk 1 to 2 hours total and 30-60 minutes uninterrupted, and sit 2 to 3 hours total and 30-40 minutes uninterrupted; and she could occasionally bend, squat, crawl, and climb steps or ladders. (*Id.*). He opined that plaintiff's restrictions had presented since at least September 12, 2011. Dr. Lee opined that plaintiff was likely to be absent from work 5 or more days per month. (Tr. 637).

On November 21, 2014, Dr. Lee completed a Spinal Impairment Questionnaire in which he opined that plaintiff could occasionally lift up to 5 pounds; occasionally carry up to 10

8

pounds; sit for 2 hours in an 8-hour day if able to get up to move around every 30-40 minutes for as long as needed; stand/walk 1 to 2 hours in an 8-hour workday; walk one block at a reasonable pace on uneven or rough surfaces; and carry out routine ambulatory activities, including shopping and banking. (Tr. 1064-69). Dr. Lee found significant limitations in reaching/handling and he assessed plaintiff as never/rarely able to use her arms for reaching (including overhead) and he limited plaintiff to occasional grasping, turning and twisting objects and occasional fine manipulation. Dr. Lee identified the supporting clinical findings as tenderness in the cervical and lumbar spine, occasional pseudoclaudication[1], muscle spasm in the scapula, crepitus in the left shoulder, trigger points in the scapula, limited and painful lumbar and cervical spine and shoulder range of motion, and sensory loss in the left 4th and 5th fingers. (Tr. 1065-66). According to Dr. Lee, plaintiff would need to take unscheduled breaks 1 to 2 times an hour at unpredictable intervals during an 8-hour workday. (Tr. 1068). He opined that plaintiff's pain would likely be aggravated if she were placed in a competitive work environment and that her pain, fatigue, or other symptoms would be severe enough to interfere with her attention and concentration frequently. (Tr. 1068). He reported that her restrictions were expected to last at least 12 months. (*Id.*). Dr. Lee reaffirmed his November 2014 opinion in a narrative statement dated September 2015. (Tr. 1284).

The ALJ gave Dr. Lee's November 2014 assessment as affirmed in September 2015 "very little weight." (Tr. 136). First, the ALJ found that Dr. Lee's opinions were not fully

---

[1] "Pseudoclaudication" refers to "painful cramps that are not caused by peripheral artery disease but rather by spinal, neurological, or orthopedic disorders, such as spinal stenosis, diabetic neuropathy, or arthritis." https://medical-dictionary.thefreedictionary.com/pseudoclaudication.

supported by and consistent with the "totality of the medical evidence" showing plaintiff to be less limited than Dr. Lee opined, and with the "credible portion of [plaintiff's] activities of daily living" as set forth by the ALJ in his severe impairment finding. (Tr. 136). The ALJ found that "Dr. Lee did not have access to all of the medical evidence that is currently in the record that contradicts his conclusions." (*Id*.). Second, the ALJ found that Dr. Lee's opinion imposed far more restrictions than were supported by his own treatment notes and, specifically, there were no objective or clinical findings to support Dr. Lee's restriction to "rare or never reaching (including overhead) with [plaintiff's] arms." (*Id*., citing Tr. 1070-1196, 1565-1587). The ALJ concluded that Dr. Lee's opinion was "highly dependent upon [plaintiff's] subjective reports of symptoms and limitations," which the ALJ found were not "wholly reliable" for reasons the ALJ discussed when assessing plaintiff's credibility. (Tr. 136).

The ALJ instead largely adopted the assessments of the state agency reviewing physicians, Dr. Leslie Green, M.D., and Dr. William Bolz, M.D. (Tr. 135). Dr. Green reviewed the record on November 19, 2013 and Dr. Bolz reviewed the record on reconsideration on January 31, 2014. (Tr. 189-90, 202-03). The reviewing physicians determined that plaintiff was limited to light work with unlimited balancing; occasional climbing of ramps/stairs, stooping, kneeling, crouching and crawling; never climbing ladders/ropes/scaffolds; unlimited reaching and fingering/feeling; and occasional handling. The ALJ gave "some weight" to "the majority of these assessments," finding:

> [T]hey are consistent with the evidentiary record as a whole. However, the portion of these assessments finding the claimant limited to only occasional handling is given very little weight, as such finding is not supported by the totality of the record despite the claimant's testimony of carpal tunnel related symptomology and numbness in her hands.

(Tr. 135-36).

Plaintiff argues that the ALJ erred by giving Dr. Lee's opinions less than controlling weight on grounds that are not substantially supported by the record. (Doc. 7 at 17-18). Plaintiff contends the record contradicts the ALJ's conclusory finding that Dr. Lee based his opinion on plaintiff's subjective complaints rather than on objective medical findings; the ALJ improperly substituted his "lay conclusions," unsupported by any medical authority, for Dr. Lee's opinion on the physical limitations resulting from Dr. Lee's objective findings; the ALJ gave greater weight to the opinions of the non-examining state agency physicians, who reviewed a "markedly undeveloped" record; the ALJ erred by finding that Dr. Lee's opinion was inconsistent with plaintiff's part-time work and her activities of daily living, which she performed on a sporadic basis for short time periods; and the ALJ did not identify medical evidence to support his finding that Dr. Lee did not have access to all of the medical evidence that contradicted Dr. Lee's medical conclusions. (*Id*.). Plaintiff argues that even assuming the ALJ was not bound to give Dr. Lee's opinions controlling weight, the treating physician's opinion was nonetheless entitled to deference under 20 C.F.R. § 404.1527(c)(2)-(6) because (1) Dr. Lee treated plaintiff regularly throughout the relevant time period; (2) the nature of the treatment was focused on plaintiff's chronic pain and related limitations, which are the cause of plaintiff's alleged disability, and included multiple types of treatment ranging from physical therapy and injections to narcotic pain medications; (3) Dr. Lee provided objective support for his opinion (Tr. 1064-66); (4) the treatment record supports his opinion; and (5) Dr. Lee is a specialist in pain management who gave an opinion in his area of specialty.

Defendant argues that substantial evidence supports the ALJ's evaluation of the medical opinion evidence. (Doc. 10). Defendant alleges that in arguing otherwise, plaintiff essentially disagrees with the ALJ's weighing of the opinion evidence, which is not a basis for setting aside the ALJ's factual findings. (*Id*. at 4). Defendant argues that the ALJ is responsible for evaluating the medical evidence to assess the claimant's RFC and that the ALJ's "good reasons" for the weight given to a medical opinion may be implicit in the ALJ's decision. (*Id*. at 5). Defendant alleges that the ALJ properly evaluated Dr. Lee's assessment and found it was inconsistent with the objective medical evidence and plaintiff's activities of daily living and, "as such," the opinion "appeared" to improperly depend on plaintiff's subjective reports. (*Id*. at 6-7, citing Tr. 136).

The ALJ's decision to give Dr. Lee's November 2014/September 2015 assessment less than controlling weight is not substantially supported by the record. The ALJ reviewed the functional restrictions Dr. Lee assessed and acknowledged that treating source opinions are to be given controlling weight if (1) the opinions are well-supported by medically acceptable clinical and laboratory diagnostic techniques, and (2) are not inconsistent with the other substantial evidence. (Tr. 136). The ALJ found that Dr. Lee did not base his opinion on objective clinical and laboratory findings but instead relied on largely on plaintiff's subjective reports. (Tr. 136). However, the ALJ did not identify any specific evidence that led him to this conclusion. The ALJ acknowledged in his review of the medical evidence of record that Dr. Lee's medical records documented plaintiff's "neck and back pain." (Tr. 133). The ALJ specifically noted that physical examinations disclosed restricted range of motion, spasm, and sensory loss (Tr. 133-34), clinical findings which are "reliable objective evidence of pain," and imaging results

that showed a disc protrusion with ventral cord effacement at C6-7 and a disc protrusion at C5-6. (Tr. 134, citing Tr. 1071). Yet, the ALJ did not discuss the significance of these findings when evaluating Dr. Lee's opinion under the first prong of the controlling weight standard. (Tr. 136). *See Isaacs v. Commr. of Soc. Sec.*, No. 1:12-cv-591, 2013 WL 4067812, at *15 (S.D. Ohio Aug. 12, 2013) (Report and Recommendation) (Litkovitz, M.J.), *adopted,* 2013 WL 4833670 (S.D. Ohio Sept. 10, 2013) (citing *Jones v. Secretary, Health and Human Services,* 945 F.2d 1365, 1369-1370 (6th Cir. 1991) ("reliable objective evidence of pain includes medical evidence of muscle atrophy, reduced joint motion, muscle spasm and sensory and motor disruption"). Further, defendant concedes that the ALJ made conflicting, erroneous findings as to what Dr. Lee's records showed by stating that the evidence failed to document evidence of spasm and sensory loss. (Doc. 10 at 7-8).

Further, in evaluating Dr. Lee's opinion, the ALJ did not acknowledge the objective findings consistent with neck and back pain that Dr. Lee repeatedly made on physical examination over more than four years of treatment between September 2011 and September 2015. These findings included restricted range of motion and/or stiffness in the cervical spine, (2) restricted range of motion and/or stiffness in the lumbar spine, and (3) restricted range of motion and/or stiffness in the thoracic spine. (*See* Tr. 418-20, 363-65, 360-62, 357-59, 354-56, 342-44, 344-46, 347-49, 349-51,1094-95, 1092-93, 1088-89, 1086-87, 1084-85, 1082-83, 1080-81, 1078-79, 1076-77, 1074-75, 1072-73, 1070-1071, 1256-58, 1250-52, 1259-61, 1247-49, 1253-55, 1242-43). Dr. Lee also made findings of tenderness in the bilateral occipital muscles and cervical, thoracic, and lumbar spine, and increased neck pain on testing during this same time frame. (Tr. 418-20, 414-16, 410-12, 406-08, 402-04, 399-401, 393-95, 396-98, 390-92,

387-89, 384-86, 381-83, 378-80, 375-77, 372-74, 369-71, 366-68, 363-65, 360-62, 357-59, 354-
56, 342-44, 344-46, 347-48, 349-51, 1094-95, 1092-93, 1090-91, 1088-89, 1086-87, 1084-85,
1082-83, 1080-81, 1078-79, 1076-77, 1074-75, 1072-73, 1070-71, 1256-58, 1250-52, 1259-61,
1247-49, 1253-55, 1242-43). In addition, Dr. Lee made abnormal findings on examination of
the upper extremities, including crepitation with movement of the left scapula, Phalen sign[2]
bilaterally and on the left, decreased pinprick sensation in the left upper posterior arm and 4th
and 5th fingers, tender AC (acromioclavicular) joint, and restricted range of motion of the
extremities, over the course of four years between November 2011 and September 2015. (Tr.
410-12, 406-08, 402-04, 399-401, 393-95, 396-98, 390-92, 387-89, 384-86, 381-83, 378-80, 375-
77, 372-74, 369-71, 366-68, 363-65, 360-62, 357-59, 354-56, 342-44, 344-46, 347-49, 349-51,
1094-95, 1092-93, 1090-91, 1088-89, 1086-87, 1084-85, 1082-83, 1080-81, 1078-79, 1076-77,
1074-75, 1072-73, 1070-1071).

The record thus shows that Dr. Lee made repeated and consistent objective findings that
documented plaintiff's neck and back pain and upper extremity symptoms. However, the ALJ
did not discuss Dr. Lee's objective findings when evaluating Dr. Lee's opinion and explain why
he concluded, despite Dr. Lee's clinical and diagnostic findings, that Dr. Lee's opinion was
"highly dependent upon [plaintiff's] subjective reports of symptoms and limitations." (Tr.
136). The ALJ's discussion of the objective medical findings elsewhere in his decision does
not substantially support his conclusion that the treating physician relied on plaintiff's subjective

---

[2] "Phalen sign" refers to "[p]aresthesias over the median nerve evoked by maximum passive flexion of the wrist for 1 minute," which may indicate carpal tunnel syndrome. https://medical-dictionary.thefreedictionary.com/Phalen+sign .

complaints rather than his objective findings to assess plaintiff's functional limitations. The ALJ did not properly evaluate Dr. Lee's opinion under the first prong of the controlling weight standard.

The ALJ also failed to properly evaluate Dr. Lee's opinion under the second prong of the controlling weight standard, i.e., "whether the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart,* 710 F.3d at 376 (citing 20 C.F.R. § 1527(c)(2)). The ALJ concluded that the "totality of the medical evidence clearly supports that the claimant is not as limited as assessed by this doctor." (Tr. 136). In support of this conclusion, the ALJ noted that Dr. Lee's opinion was inconsistent with plaintiff's activities of daily living as set forth in the severe impairment finding. Specificlly, plaintiff was "independent in self-care, [she] watched the news, did dishes, went to church, picked up, did very light cleaning . . . used a laptop to access her Facebook account once or twice a day [and] worked 10 hours a week for the county filing, stapling and shredding papers in order to maintain her eligibility for cash assistance benefits. . . ." (*See* Tr. 128). However, the ALJ did not explain why he considered this relatively limited range of daily activities to be inconsistent with the restrictions Dr. Lee assessed. Plaintiff's activities of daily living are not indicative of an ability to perform a restricted range of light or sedentary work on a regular and continuing basis despite her severe impairments. *See* SSR 96-8P, 1996 WL 374184, at *1 (RFC is the assessment of an individual's ability to perform "sustained work-related physical . . . activities in a work setting on a regular and continuing basis . . . [i.e.] 8 hours a day, for 5 days a week, or an equivalent work schedule.").

The ALJ also rejected Dr. Lee's opinion because he found that Dr. Lee was unable to consider other medical evidence that contradicted his opinion. (Tr. 136). The ALJ did not identify the medical evidence that he relied on to reach this conclusion. Defendant concedes the ALJ did not clearly identify the evidence in question, but defendant theorizes that the ALJ "seemingly" was referring to the medical records in Exhibit 18F based on the following excerpt from the ALJ's decision:

> Dr. Lee did not have access to all of the medical evidence that is currently in the record that contradicts his conclusions. There is no objective or clinical findings in the record to support his limitation to rare or never reaching (including overhead) with her arms. Dr. Lee's opinion is far more restrictive than what is supported by the objective medical evidence, including Dr. Lee's own treatment notes (Exhibits 12F; 18F).

(Doc. 10 at 11, citing Tr. 135). Defendant posits that by referencing both Exhibit 12F, which consists of Dr. Lee's records, and Exhibit 18F, which does not include Dr. Lee's records, the ALJ must have meant that the records included in Exhibit 18F contradicted Dr. Lee's assessment. Defendant argues that read as a whole, the ALJ "set forth the evidence he presumably relied on" to find Dr. Lee did not have access to all the medical evidence that contradicted his conclusions. (*Id.*). The Court disagrees. As defendant's attempt to make sense of this portion of the ALJ's decision demonstrates, one can only speculate as to what the ALJ meant when he wrote that Dr. Lee did not have access to all of the evidence that contradicted to his opinion. A meaningful review of this aspect of the ALJ's decision is therefore impossible. The ALJ did not make a proper finding, supported by substantial evidence, that Dr. Lee's opinion was not consistent with the totality of the evidence. *See Friend v. Comm'r of Soc. Sec.,* 375 F. App'x 543, 552 (6th Cir. 2010) ("[I]t is not enough to

16

dismiss a treating physician's opinion as 'incompatible' with other evidence of record; there must be some effort to identify the specific discrepancies and to explain why it is the treating physician's conclusion that gets the short end of the stick.").

Thus, the ALJ did not comply with his obligations under 20 C.F.R. § 404.1527(c) in applying the controlling weight standard. The ALJ's conclusion that Dr. Lee's opinion of debilitating limitations was not supported by his objective findings and was inconsistent with the other evidence of record is not substantially supported.

If the ALJ declines to give a treating source's opinion controlling weight, the ALJ must weigh the factors specified in 20 C.F.R. § 404.1527(c) to decide what weight to give the opinion; specifically, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source. *See Shields v. Commr. of Soc. Sec.*, No. 17-6091, -- F. App'x --, 2018 WL 2193136, at \*7 (6th Cir. May 14, 2018) (citing *Wilson*, 378 F.3d at 544) (emphasis added)); *see also Blakley*, 581 F.3d at 408 ("Treating source medical opinions [that are not accorded controlling weight] are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527[(c)]"). The ALJ's decision "must contain specific reasons for the weight given to [a] treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p, 1996 WL 374188, at \*5. This requirement serves two purposes: (1) "it helps a claimant to understand the disposition of her case, especially 'where a claimant knows that h[er] physician has deemed h[er] disabled,'"

and (2) it "permits meaningful review of the ALJ's application of the [treating-source] rule."
*Shields*, 2018 WL 2193136, at *7 (citing *Wilson*, 378 F.3d at 544). The Sixth Circuit has made clear that remand is appropriate "when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion" and when the ALJ has not "*comprehensively* set forth the reasons for the weight assigned to a treating physician's opinion." *Id.* (quoting *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009) (emphasis added by *Hensley*) (quoting *Wilson*, 378 F.3d at 545).

The ALJ did not give "good reasons" for assigning Dr. Lee's opinions "very little weight." (Tr. 136). The ALJ implied in his decision that he considered some of the factors listed under § 404.1527(c) in weighing Dr. Lee's opinion, namely (1) the supportability of the opinion, and (2) the consistency of Dr. Lee's opinions with other evidence in the record. (*Id.*). The ALJ stated that Dr. Lee's opinions and restrictions, including the restriction to rare or no reaching (including overhead), were not supported by any objective or clinical findings, which included Dr. Lee's own treatment notes. (*Id.*, citing Tr. 1070-1196, 1565-87). The ALJ noted that instead, Dr. Lee's findings appeared to be "highly dependent" on plaintiff's subjective complaints, which were not "wholly reliable," and that his opinion was not fully consistent with plaintiff's activities of daily living as discussed more fully in connection with the ALJ's assessment of plaintiff's severe impairments. (Tr. 136, citing Finding #3, Tr. 127-131). However, the ALJ failed to identify specific discrepancies between Dr. Lee's functional assessment and plaintiff's daily activities and the ALJ did not cite particular portions of the record to support his findings. The ALJ's barebones analysis of this aspect of the record does not qualify as an "assessment of the [treating physician's] opinion" under 20 C.F.R. §

404.1527(c) and SSR 96-2p. *Shields*, 2018 WL 2193136, at *7-10 (citing *Friend*, 375 F. App'x at 551-52).

Defendant does not deny that the ALJ failed to discuss Dr. Lee's objective findings when evaluating his opinion, but defendant argues the record considered as a whole substantially supports the ALJ's finding that Dr. Lee's opinion was entitled to "very little weight." (Doc. 10 at 7, citing Tr. 133-34). Defendant notes that in reviewing the medical evidence, the ALJ stated there were objective findings of "some tenderness in the cervical and lumbar spine, occasional claudication, muscle spasm in the scapula, crepitus in the left shoulder, trigger points in the scapula, and sensory loss in the left 4th and 5th fingers" (Tr. 1064-69)," and imaging results showed a disc protrusion with ventral cord effacement at C6-7 and a disc protrusion at C5-6 (Tr. 1071). (Tr. 134). Defendant argues that notwithstanding this objective evidence, the ALJ discounted Dr. Lee's opinions and assessment of "extreme" restrictions because many of the signs typically associated with chronic severe pain - such as muscle atrophy, spasm, rigidity, or tremor - were lacking. (Doc. 10 at 8; *see* Tr. 134, citing Tr. 1070-1196, 1283-86, 1565-87). Defendant concedes that the ALJ's findings are not entirely consistent and factually accurate because the medical record does document spasm as well as sensory loss, which the ALJ indicated were lacking, but defendant argues that these "few misstatements" do not "overcome the remainder of the ALJ's consideration." (Doc. 10 at 8).

The Court disagrees that the ALJ properly evaluated whether Dr. Lee's opinion was supported by his objective findings. As discussed above, the ALJ found that the medical evidence documented plaintiff's neck and back pain and that examinations disclosed restricted range of motion, spasm, and sensory loss (Tr. 133-34), which constitute "reliable objective

evidence of pain." *See Isaacs*, 2013 WL 4067812, at *15. The ALJ also noted positive imaging results. (Tr. 134, citing Tr. 1071). However, the ALJ did not discuss the significance of these objective findings when evaluating Dr. Lee's opinion, and the ALJ erroneously disregarded at least some of the objective signs documented by Dr. Lee. (Tr. 133). Further, in evaluating Dr. Lee's opinion, the ALJ did not acknowledge the objective findings consistent with neck and back pain that Dr. Lee repeatedly made on physical examination over the course of four years. The ALJ erred by failing to identify the discrepancies between Dr. Lee's findings and his opinion and to explain why the objective medical findings Dr. Lee made did not support his functional assessment.

The ALJ also erred by failing to identify substantial medical evidence in the record that the ALJ believed was inconsistent with Dr. Lee's opinions. *See* 20 C.F.R. § 404.1527(c)(4). The only other medical opinions of record were issued by the non-examining state agency physician, Drs. Green and Bolz. The ALJ gave portions of their opinion "some weight" on the sole ground their assessment was "most consistent with the medical evidence of record" (Tr. 135), but the ALJ did not indicate what medical evidence supported the reviewing physicians' opinion as opposed to the opinion of Dr. Lee and it is impossible to discern the basis for the ALJ's finding from his decision.

Nor did the ALJ consider any of the other regulatory factors he was required to take into account when weighing Dr. Lee's opinion, which include the nature and extent of the treatment relationship with plaintiff, the frequency of examination, and Dr. Lee's area of specialization. *See* 20 C.F.R. § 404.1527(c)(5) ("We generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion

of a source who is not a specialist."). The ALJ did not take into account that Dr. Lee treated plaintiff consistently on a monthly basis, over a period of four years, for purposes of pain management treatment, and neither did the ALJ consider the types of treatment that Dr. Lee administered. The ALJ did not factor into his decision Dr. Lee's area of specialization in pain management, which is particularly relevant here given plaintiff's allegations of debilitating pain. Thus, the ALJ's finding that Dr. Lee's opinion was entitled to "very little weight" for reasons the ALJ did not adequately explain, based on the conflicting medical opinion of the non-examining medical sources, is not substantially supported. *See Shields*, 2018 WL 2193136, at *7 (citing *Friend*, 375 F. App'x at 551-52) (holding that the ALJ committed reversible error by discounting a treating source's assessment of the claimant's functional abilities on the grounds that (1) a reviewing source's assessment of those limitations was "more consistent with the objective clinical findings" and (2) "there [was] no basis for [the treating physician's] conclusion" about the claimant's functional abilities).

Although the ALJ's failure to provide good reasons can, under some circumstances, constitute a "harmless *de minimis* procedural violation," that is not the case "where the error makes meaningful review impossible." *Shields*, 2018 WL 2193136, at *8 (citing *Blakley*, 581 F.3d at 409). Further, whether a procedural error is harmless does not depend on the likelihood of success on remand. *See Shields*, 2018 WL 2193136, at *8 (citing *Wilson*, 378 F.3d at 546) (quoting *Mazaleski v. Treusdell*, 562 F.2d 701, 719 n. 41 (D.C. Cir. 1977)). Because meaningful review of the ALJ's decision is not possible in this case, the ALJ's failure to weigh the treating pain management specialist's opinion in accordance with the treating physician rule was not harmless error.

Plaintiff's first assignment of error should be sustained.

**2. The ALJ's credibility finding**

Plaintiff alleges that the ALJ's credibility finding is not supported by substantial evidence. Resolution of this issue may be impacted by the ALJ's reevaluation of the medical opinion evidence on remand. Accordingly, the Court need not address the ALJ's credibility finding at this time.

**III. This matter should be reversed and remanded for further proceedings.**

In determining whether this matter should be reversed outright for an award of benefits or remanded for further proceedings, the Court notes that all essential factual issues have not been resolved in this matter, nor does the current record adequately establish plaintiff's entitlement to benefits as of her alleged onset date. *Faucher v. Secretary of H.H.S.,* 17 F.3d 171, 176 (6th Cir. 1994). This matter should be remanded for further proceedings, including consideration and reevaluation of the opinions of the treating physician and other medical sources of record, and reassessment of plaintiff's credibility and additional vocational testimony as warranted, consistent with this decision.

<b>IT IS THEREFORE RECOMMENDED THAT</b>:

The decision of the Commissioner be **REVERSED** and **REMANDED** for further proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g).

Date: _7/16/18_

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

JENNIFER KAY INLOW,
    Plaintiff,

Case No. 1:17-cv-163
Barrett, J.
Litkovitz, M.J.

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

## NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn*, 474 U.S. 140 (1985); *United States* v. *Walters*, 638 F.2d 947 (6th Cir. 1981).